# EXHIBIT "2"

## ESCROW AGREEMENT

This Escrow Agreement (this "Agreement") dated as of 19th May, 2015 is by and between CARILLON TOWER/CHICAGO, L.P., a New York limited partnership (the "Limited Partnership"), and TD BANK, N.A., a national banking association organized and existing under the laws of the United States of America, as Escrow Agent (the "Escrow Agent").

### 1. Recitals

WHEREAS, certain persons desire to acquire limited partnership interests in the Limited Partnership (the "Interests"), as described in the Limited Partnership's Preliminary Confidential Private Offering Memorandum attached to this Agreement as Exhibit A (the "Offering Memorandum") and the Partnership Agreement (as defined in the Offering Memorandum). Unless otherwise defined in this Agreement, capitalized terms used herein have the respective meanings assigned to them in the Offering Memorandum or the Partnership Agreement, as the case may be:

WHEREAS, pursuant to the Subscription Agreement attached hereto as Exhibit B (the "Subscription Agreement"), each subscriber is required to transfer in to the Escrow Accounts the sum of U.S. Five Hundred and Fifty Thousand Dollars (US$550,000.00), representing two separate amounts:

2. U.S. Five Hundred Thousand Dollars (US$500,000.00) (the "Capital Contribution"); and

3. U.S. Fifty Thousand Dollars (US$50,000.00) (the "Administrative Fee"):

WHEREAS, as described more fully in the Offering Memorandum, each subscriber irrevocably commits the Capital Contribution to investment in a high rise mixed-use real estate development at the corner of Superior Street and Wabash Street in the City of Chicago, Illinois (the "Project") upon the subscriber's delivery of the Capital Contribution, the Administrative Fee and the executed Subscription Agreement:

WHEREAS, as described more fully in the Offering Memorandum, each subscriber's Capital Contribution shall be irrevocably committed once accepted by the Partnership, subject to repayment only upon denial of the subscriber's I-526 Petition by the U.S. Citizenship and Immigration Service (the "USCIS"), and shall be immediately available and put to use in the Project for job creation purposes when released pursuant to the terms and conditions hereof, which shall be no later than the time when notice of approval of a subscriber's I-526 Petition is received from the USCIS.

WHEREAS, the Escrow Agent has no relationship, other than that of Escrow Agent, to the Limited Partnership, its affiliates or legal representatives; and

WHEREAS, the Escrow Agent will open two Escrow Accounts (the "Escrow Accounts") entitled the "Carillon Tower/Chicago, L.P. Contribution Escrow Account" (the "Contribution Escrow Account") and the "Carillon Tower/Chicago, L.P. Expense Escrow Account" (the "Expense Escrow Account"), and shall deposit the Capital Contribution in the Contribution Escrow Account and the Administrative Fee in the Expense Escrow Account and hold and disperse the funds in the Escrow Accounts in accordance with this Agreement.

NOW THEREFORE, in consideration of the premises and the mutual covenants and agreements herein set forth, the parties hereby agree as follows:

**Section 1. Engagement and Duties of the Escrow Agent**. The Limited Partnership hereby engages the Escrow Agent to serve as the escrow agent hereunder and the Escrow Agent hereby accepts such engagement and agrees to receive, hold, deliver, and deal with the Capital Contribution and Administrative Fee on the terms and conditions herein set out. The Limited Partnership agrees to pay the charges of the Escrow Agent set forth on Exhibit C to this Agreement.

**Section 2. Creation of Escrow Accounts**. The Limited Partnership hereby directs the Escrow Agent to remit (i) the Capital Contribution to the Contribution Escrow Account and (ii) the Administrative Fee to the Expense Escrow Account, as follows:

**Contribution Escrow Account**

| | |
|---|---|
| Credit Bank: | TD Bank, N.A. |
| ABA Number: | 011600033 |
| SWIFT Code | NRTHUS33 |
| For the Benefit of: | Trustee Clearing Account DDA 76-8270-01-9 |
| For Further Credit to Name: | CARILLON TOWER/CHICAGO, L.P. |
| From (Subscriber Name): | _____ |
| Amount: | _____ |

**Expense Escrow Account**

| | |
|---|---|
| Credit Bank: | TD Bank, N.A. |
| ABA Number: | 011600033 |
| SWIFT Code: | NRTHUS33 |
| For the Benefit of: | Trustee Clearing Account DDA 76-8270-02-7 |
| For Further Credit to Name: | CARILLON TOWER/CHICAGO, L.P. |
| From (Subscriber Name): | _____ |
| Amount: | _____ |

The Escrow Agent shall provide to the Limited Partnership monthly statements of the Escrow Accounts and their activity.

While funds are held in the Escrow Accounts, the Escrow Agent, shall, at the written direction of the Limited Partnership, invest the funds in: (i) any short-term obligations which as to principal and interest constitute direct obligations of, or are guaranteed by, the United States of America; (ii) certificates of deposits of banks or trust companies with maturities of three (3) months or less, including TD Bank, N.A. or any of its affiliates, organized under the laws of the United States of America or any state thereof and insured by the Federal Deposit Insurance Corporation ("FDIC"); or (iii) the TDAM US Treasury Obligations Money Market Fund. The parties hereto are aware that the FDIC insurance applies only to a cumulative maximum amount of US Two Hundred Fifty Thousand Dollars (US$250,000.00) for all depository accounts at the same or related institutions. Further, the parties hereto understand that the Escrow Agent assumes no responsibility for, nor will the parties hereto hold the Escrow Agent liable for, any loss occurring which arises from the fact that the amount of the above account may cause the aggregate amount of any individual depositor's accounts to exceed US Two Hundred Fifty Thousand Dollars (US$250,000.00) and that the excess amount is not insured by the FDIC.

**Section 3. Funds.** From time to time upon execution of this Agreement, subscribers shall wire their respective Capital Contribution and the Administrative Fee to the Escrow Agent in accordance with the instructions in Section 2 above. The Capital Contribution and the Administrative Fee shall be held in their respective Escrow Accounts in accordance with this Agreement. Promptly upon receipt of such funds, the Escrow Agent shall provide deposit confirmation acknowledging receipt of such funds to both the relevant subscriber and the Limited Partnership.

## Section 4. Disbursement of Capital Contribution In Contribution Escrow Account.

Action Upon Rejection of Subscription. The Limited Partnership may reject any subscription at any time prior to the Limited Partnership's delivery of a written direction to disburse any part of the Capital Contribution to the Limited Partnership, but not after the respective Subscriber's filing of the Form I-526 Petition. The Limited Partnership shall promptly notify the Escrow Agent with a written direction in the event of any such rejection. Upon the receipt of a written direction, the Escrow Agent shall return to the subscriber whose subscription has been rejected the Capital Contribution tendered by such Subscriber, without deduction or payment of interest.

Action Upon Termination of Cancellation of the Offering. Upon the receipt of a written notice from the Limited Partnership that the offering as described in the Offering Memorandum has been terminated or cancelled, all funds received from subscribers will be returned to them from the Contribution Escrow Account without deduction or payment of interest in accordance with written directions provided by the Limited Partnership. For avoidance of doubt, the Limited Partnership shall not terminate or cancel the Offering after providing written direction to disburse any part of any subscriber's Capital Contribution to the Limited Partnership.





Action Upon Achievement of Holdback Trigger. Upon a written direction of the Limited Partnership certifying that the Holdback Trigger has been satisfied, the Escrow Agent shall remit 80% of the Capital Contribution of each Investor from the Contribution Escrow Account to the Limited Partnership and retain 20% of the Capital Contribution (the "Holdback Amount") in an account (the "Holdback Escrow Account") for the benefit of each Subscriber. The "Holdback Trigger" shall have occurred once both of the following conditions have been satisfied:

a. USCIS shall have approved the Form I-526 Petitions of one Subscriber for a Limited Partnership Interest (related to an investment of Five Hundred Thousand U.S. Dollars (US$500,000);

b. The Partnership has provided evidence that the Project plan has been formally submitted to the Chicago Commissioner of Planning and Development.

Action Upon Approval of Form I-526. Upon a written direction of the Limited Partnership certifying that the USCIS has approved a subscriber's Form I-526 Petition, the Escrow Agent shall promptly remit a subscriber's Holdback Amount (if not previously released pursuant to Section 4(e)) from the Holdback Escrow Account to the Limited Partnership.

Action Upon Denial of Form I-526. Upon a written direction of the Limited Partnership certifying that the USCIS has denied (without appeal or after denial of any appeal) a subscriber's Form I-526 Petition, the Escrow Agent shall return the subscriber's Holdback Amount, if such funds remain in the Holdback Escrow Account, to the denied subscriber identified in such written direction, without deduction or payment of interest. The Limited Partnership shall also provide in the written direction for the Escrow Agent to disburse from the Escrow Holdback Account an additional $400,000 (in the case where the denied subscriber's Holdback Amount remained in the Holdback Escrow Account) or $500,000 (in the case where the denied subscriber's Holdback Amount has previously been disbursed from the Holdback Escrow Account) from the Holdback Amounts of subscribers to the general operating account of the Limited Partnership to fund the remainder of the capital contributions of such subscribers so the Limited Partnership can continue operations without deficit being caused by the refund of the denied subscriber's capital contribution in accordance with the terms and conditions set forth in the Limited Partnership's Offering Memorandum. The Escrow Agent shall rely, conclusively and without further inquiry, upon the Limited Partnership to designate, in writing, the subscribers whose Holdback Amounts shall be disbursed to the Limited Partnership's general operating account for this purpose.

Interest. No subscriber shall receive any interest on any funds held by the Escrow Agent or the Limited Partnership and all investment earnings shall accrue to, and be payable to, the Limited Partnership. After disbursements under Section 4(a) above, the Escrow Agent shall disperse all remaining monies in respect of the subscriber in the Contribution Escrow Account to the Limited Partnership at the same time any disbursement is made to such subscriber at the direction of the Limited Partnership in accordance with Section 8 hereof.

## Section 5. Disbursement of Administrative Fee In Expense Escrow Account.

Action Upon Rejection of Subscription. Upon the receipt of a written direction of the Limited Partnership stating that it has rejected a subscription, the Escrow Agent shall return to the subscriber whose subscription has been rejected the Administrative Fee tendered by such subscriber, without deduction or payment of interest.

Action Upon Termination of Cancellation of the Offering. Upon the receipt of a written notice from the Limited Partnership that the offering as described in the Offering Memorandum has been terminated or cancelled, Administrative Fees received from subscribers will be returned to them from the Expense Escrow Account without deduction or payment of interest in accordance with written directions provided by the Limited Partnership.

Action Upon Achievement of Holdback Trigger. Upon a written direction of the Limited Partnership certifying that the Limited Partnership has accepted a subscriber's subscription, the Escrow Agent shall remit to the Limited Partnership 100% of the Administrative Fees of such subscriber held in the Expense Escrow Account.

Interest. No subscriber shall receive any interest on any funds held by the Escrow Agent or the Limited Partnership and all investment earnings shall accrue to, and be payable to, the Limited Partnership.

**Section 6. Duties of the Limited Partnership.** The Limited Partnership shall provide the Escrow Agent with:

(a) Evidence, reasonably satisfactory to the Escrow Agent, that this Agreement has been duly authorized. executed, and delivered on the part of the Limited Partnership.

Any information it has with respect to any subscriber available to the Limited Partnership which may reasonably be required by the Escrow Agent and may be disclosed by law.

The information listed on Exhibit D attached hereto.

**Section 7. Disputes.** In the event of any dispute arising as to any provisions hereof or as to the Escrow Agent's duties. the Escrow Agent shall be entitled to retain legal counsel to tender unto the registry or custody of any court of competent jurisdiction all money or property in its hands held under the terms of this Escrow Agreement, together with such legal pleading as it deems appropriate, and thereupon be discharged. The cost of such proceeding shall be paid by the Limited Partnership, provided that the Escrow Agent shall request the prior approval of the Limited Partnership respecting the retaining of counsel to the Escrow Agent, which approval will not be unreasonably withheld or delayed. All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in a court of applicable jurisdiction in the State of New York, and the parties hereto hereby submit to the exclusive jurisdiction of such courts and irrevocably waive any claim or defense that it is not subject to personal jurisdiction of such courts.

**Section 8. Compensation and Expenses.** The Limited Partnership directs the Escrow Agent to disburse to the Limited Partnership all investment earnings on all the funds held in the Escrow Account remaining after disbursement of amounts to a subscriber or the Limited Partnership pursuant to Section 4 or 5 above and after the Escrow Agent has been reimbursed for reasonable fees or expenses incurred in connection with its obligations under this Agreement. In no event shall such fees reduce the aggregate amount disbursed from the Contribution Escrow Account of a subscriber to the Limited Partnership below $500,000.

**Section 9. Liability.** The Escrow Agent shall not be liable for any damage, liability or loss arising out of. or in connection with. the services rendered by the Escrow Agent pursuant to this Agreement, except for any damage. liability or loss resulting from the gross negligence. willful misconduct or breach of the Agreement by the Escrow Agent. The Limited Partnership indemnifies and holds the Escrow Agent harmless from and against any and all claims. damages. liabilities. obligations. losses. deficiencies. penalties. judgments. costs. disbursements. and expenses of any kind or nature (including. but not limited to. the reasonable fees and disbursements of counsel and amounts paid or agreed to be paid in settlement of any claim. action. suit. or proceeding or investigation) in any matter resulting from. arising out of. based upon or related and attributable to any claim of any party under this Agreement (other than with respect to any gross negligence or willful misconduct or breach as stated above). The Escrow Agent may rely on the Limited Partnership's internal anti-money laundering policies and procedures and shall have no responsibility to identify any subscriber.

**Section 10. Notices.** All notices or communications given by any party hereunder shall be delivered in person. by overnight courier service or by mail. postage prepaid, to the address of the parties as set forth under their respective signatures hereto or such other address as may be

given by notice to the other parties by a party hereto by facsimile transmission at the number given by notice to the other parties by a party hereto, or by email to the address given by notice to the other parties by a party hereto. Notices shall be deemed given on the date they are delivered in person, by facsimile transmission or by email, two (2) days after deposit with an overnight courier service or three (3) days after being deposited in the mail, postage prepaid.

**Section 11. Resignation.** Escrow Agent shall have the right to resign at any time upon thirty (30) days' prior written notice to the Limited Partnership to request that the Limited Partnership designate a substitute Escrow Agent in accordance with this Section 11. If a replacement Escrow Agent has not been appointed within such thirty (30) day period, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor Escrow Agent and upon such appointment deliver all funds and property to such successor.

**Section 12. Execution and Counterparts.**

(a)    This Escrow Agreement may be executed in two or more counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same document and signatures by facsimile or fax shall suffice to evidence the execution and delivery of this Agreement by the parties hereto.

The Limited Partnership agrees to provide the Escrow Agent with all instruments and documents within their respective powers which the Escrow Agent requires to perform its duties hereunder.

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, heirs and assigns as permitted hereunder.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to such jurisdiction's principles of conflict of laws.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the undersigned have caused this Escrow Agreement to be executed as of the 19 day of May, 2015.

CARILLON TOWER/CHICAGO, L.P.

By: Forefront EB-5 Fund (ICT), LLC, its
General Partner

By: _____
Name: Jeffrey Laytin
Title: Managing Member

Address:    7 Times Square, 37th Floor,
New York, NY 10036

TD BANK, N.A.

By: _____
Name: Stephen Schaaf
Title: Vice President

Address:    1006 Astoria Boulevard
Cherry Hill, New Jersey