UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINA DOU, *et al*.,

Plaintiffs,

-v-

TD BANK N.A.,

Defendant.

23-CV-4880 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs are Chinese investors who allege that TD Bank, N.A. ("TD") improperly released their investment funds from escrow, thereby allowing the funds to be misappropriated. TD filed a motion to dismiss, which the Court granted in part. *See Dou v. TD Bank N.A.*, No. 23-CV-4880, 2024 WL 4252500 (S.D.N.Y. Sept. 20, 2024) ("*Dou I*"). The parties have filed cross-motions for summary judgment on Plaintiffs' remaining claims. TD argues that Plaintiffs' claims arise from a forged escrow agreement. However, while TD raises real questions as to the authenticity of the document, there remain triable disputes, and the parties' cross-motions must be denied.

Having held oral argument, the Court assumes familiarity with the pertinent facts. (*See* Minute Entry dated June 11, 2025). As explained in *Dou I*, Plaintiffs each invested $550,000 in a Chicago-based real-estate development partnership (the "Partnership"). *See* 2024 WL 4252500, at *1-2. The Partnership's first iteration, Intercontinental Tower/Chicago, L.P., was created to develop a hotel in downtown Chicago. (ECF No. 113 ("TD SOF") ¶¶ 3, 17; ECF No. 143 ("Pls. cSOF") at 4-5, 19-20.) The Partnership was later reconfigured as Carillon Tower/Chicago, L.P. (TD SOF ¶ 17; Pl. cSOF at 19-20.) TD was the project's escrowee, pursuant to an initial contract signed in 2014 (the "2014 Agreement"). (TD SOF ¶¶ 5-12; Pls.

cSOF at 5-13.)  Plaintiffs allege that TD and the Partnership then executed a second escrow contract in 2015 (the "2015 Agreement"), which TD argues is a forgery.  (*See* TD SOF ¶ 21; Pl. cSOF at 22-25; ECF No. 105 ¶¶ 1-5.)  Specifically, TD argues the Partnership tricked TD's representative, Stephen Schaaf, into signing a standalone signature page, which the Partnership then "unauthorizedly affixed . . . to [the 2015 Agreement]."  (TD SOF ¶¶ 20-21.)  Complicating matters, Schaaf passed away in October 2023 (ECF No. 110 ("TD Mem.") at 11) and apparently was never deposed.

The core dispute arising under the agreements is whether TD violated certain conditions (the "Holdback Trigger") governing the release of Plaintiffs' funds.  (*See* "TD Mem." at 8-10; ECF No. 104 ("Pls. Mem.") at 6-7.)  Previously, the Court held that the 2015 version of the Holdback Trigger could be reasonably interpreted as requiring TD—before releasing the funds— to (1) receive written direction from the Partnership to release the funds ("Condition 1"), and (2) receive "evidence," also in writing, that the project plan had been submitted to Chicago authorities ("Condition 2").  *Dou I*, at *6-7.  Nothing in the summary judgment record persuades the Court to revisit that conclusion.[1]  What discovery has now shown, though, is that only the 2015 agreement included Condition 2.  (TD SOF ¶ 22.)[2]  TD Bank thus argues that it is entitled to summary judgment because it complied with Condition 1, and should not be held to Condition 2 because the 2015 Agreement was forged.

---

[1] Nor is the Court persuaded to revisit its conclusion that Plaintiffs are third-party beneficiaries of the escrow agreements, at least assuming neither of the agreements is forged. (*Cf.* TD Mem. at 23-26.)

[2] A presumption of public access applies to this Opinion and the materials upon which it relies, and is not outweighed by any countervailing factors.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123-24 (2d Cir. 2006).  The Opinion shall therefore be filed publicly on the docket.  Moving forward, the parties shall adhere to this principle and shall not file under seal any documents or materials referenced or relied upon here.

Having reviewed the evidence, the Court concludes that there are unresolved factual disputes precluding summary judgment, which may be granted only if there is "no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), considering the evidence "in the light most favorable to the non-moving party and draw[ing] all reasonable inferences in its favor," *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995). There exists a document containing the 2015 Agreement and the signature of a TD representative. TD's arguments for ignoring that document—that TD would not have willingly entered the 2015 Agreement (TD SOF ¶ 28), that the 2015 Agreement contains typos, formatting errors, and unusual terms (*id.* ¶ 29), that there is no paper record of the complete 2015 Agreement being shared with TD (*id.* ¶ 30), and that the 2014 Agreement was used as a template for later agreements (*id.* ¶¶ 31-34)—may ultimately persuade a reasonable jury. But a reasonable jury could also reach the opposite conclusion—that TD, or just Schaaf, deviated from ordinary procedure, conducted negotiations on the phone or in person, acted carelessly by failing to retain paper records, or overlooked some of the supposed errors in the 2015 Agreement. The Court is not permitted at summary judgment to assume the regularity of a bank's internal operations, nor the candor of its employees. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[3]

---

[3] Plaintiffs also move to strike portions of TD's declarations, particularly John Schautz's, arguing *inter alia* that they lack a proper foundation in personal knowledge. (ECF Nos. 129, 141 at 2.) Whatever the declarations' admissibility (*cf.* ECF No. 164 at 19-21), their lack of foundation in personal knowledge does undermine their weight. For example, Schautz's lack of firsthand knowledge of Schaaf's conduct would permit a rational jury to discount Schautz's "certain[ty]" that "TD would not have entered into [the 2015 Agreement]." (ECF No. 112 ¶ 24.) For the same reason, the declarations do not compel the Court to grant summary judgment, even if they are ultimately admissible. Thus, Plaintiffs' motion to strike is denied without prejudice.

Moreover, TD Bank has not even conclusively proved that it adhered to the 2014 Agreement. While TD identifies one email it received from the Partnership requesting the release of $900,000.00 from escrow (*see* TD SOF ¶¶ 15-16; ECF No. 111-33 at 2), the summary judgment record is devoid of any subsequent written requests. As Plaintiffs note, the 2014 Agreement permitted TD to release only "such amount . . . as the Limited Partnership designates in a written request signed by the Limited Partnership in which the Limited Partnership certifies that the Holdback Trigger has been satisfied and that the Limited Partnership is entitled to receive the amount so designated." (*See* TD SOF ¶ 22.)[4] Thus, TD has proven at most that it was authorized to release $900,000, not the approximately $45 million it did release. (*See* Pl. cSOF at 18.)[5]

Finally, TD argues that the 2015 Agreement's use of the phrase "executed as of" rather than "effective as of" precludes Plaintiffs from recovering funds released in the roughly two-month period before Schaaf signed the 2015 Agreement's signature page. (TD Mem. at 33-34.) The Court disagrees that "executed as of" cannot, as a matter of law, constitute "express words" rendering the 2015 Agreement retroactive. TD has identified no case supporting such a categorical rule, nor any other basis for concluding that "executed as of" is unambiguous in TD's preferred sense. Summary judgment is therefore unwarranted.

---

[4] The single email may have been enough under the 2015 Agreement, which allowed TD to release 80% of the escrowed funds "[u]pon a written direction of the Limited Partnership certifying that the Holdback Trigger has been satisfied." (TD SOF ¶ 22.)

[5] While Plaintiffs raise this argument only in their counterstatement of material facts, TD does not affirmatively argue in its own motions that it complied with the 2014 Agreement's Holdback Trigger.

Accordingly, the parties' cross-motions for summary judgment are denied.  As discussed at oral argument, Plaintiffs shall file any motion for class certification within 14 days of the publication of this opinion.

The Clerk of Court is directed to close the motions at ECF Numbers 103, 108, 127, and 129.

SO ORDERED.

Dated: July 9, 2025
      New York, New York

_____
                    J. PAUL OETKEN
                United States District Judge