UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINA DOU, *et al*.,

Plaintiffs,

-v-

TD BANK N.A.,

Defendant.

23-CV-4880 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs are Chinese investors who allege that TD Bank, N.A., ("TD Bank") improperly released their investment funds from escrow, thereby allowing the funds to be misappropriated. Before the Court now is Plaintiffs' motion to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion for class certification is granted.

## I.    Background

The Court assumes familiarity with the factual background of this case, on the basis of the Court's prior opinions addressing TD Bank's motion to dismiss and the parties' cross-motions for summary judgment on Plaintiffs' remaining claims. *See Dou v. TD Bank N.A.*, No. 23-CV-4880, 2024 WL 4252500 (S.D.N.Y. Sept. 20, 2024) ("*Dou I*"); *Dou v. TD Bank N.A.*, No. 23-CV-4880, 2025 WL 1898254 (S.D.N.Y. July 9, 2025) ("*Dou II*"). The facts below are taken from Plaintiffs' second amended complaint ("SAC") as well as the parties' submissions on the pending motions, and the Court resolves factual disputes as necessary to address the class certification issues raised. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011).

A.    **The Escrow Agreement**

The ten individual named Plaintiffs brought suit against TD Bank.  (*See generally* ECF No. 25 ("SAC").)  Each Plaintiff, along with seventy-five other Chinese-national investors (collectively the "Investors"), invested $550,000 in the project, Carillon Tower/Chicago LP ("Carillon"), in hopes of obtaining a visa under the EB-5 Immigrant Investor Program, which provides a path to permanent residence within the United States.  (*Id.* ¶¶ 4, 6, 12-13.)  Carillon actively courted investors, presenting them with an Offering Memorandum, stating that "Carillon was organized to serve as a new commercial enterprise under the EB-5 immigrant investor program," and explaining how the project qualified.  (*Id.* ¶¶ 16-17 (internal quotation marks omitted).)  Each Investor allegedly understood that their $550,000 would be wired into escrow accounts at TD Bank pursuant to an agreement (the "Escrow Agreement") between Carillon and TD Bank executed in May 2015.  (*Id.* ¶ 29; ECF No. 181 ("Mem.") at 6.)

The Escrow Agreement required the placement of the investment funds into escrow accounts at TD Bank.  (*See* ECF No. 25-2 at 2-3*.*)  According to the Escrow Agreement, the funds were to be released to Carillon upon TD Bank's receipt of written evidence from Carillon that the terms and conditions of the Escrow Agreement were satisfied.  (*Id.* at 4.)  The conditions were governed by Section 4 of the Escrow Agreement, entitled the "Holdback Trigger," which provided:

> Action upon Achievement of Holdback Trigger.
>
> Upon a written direction of the Limited Partnership certifying that the Holdback Trigger has been satisfied the Escrow Agent shall remit 80% of the Capital Contribution of each Investor from the Contribution Escrow Account to the Limited Partnership and retain 20% of the Capital Contribution (the "Holdback Amount") in an account (the "Holdback Escrow Account") for the benefit of each Subscriber. The "Holdback Trigger" shall have occurred once both of the following conditions have been satisfied:

a.     USCIS shall have approved the Form I-526 Petitions of one Subscriber for Limited Partnership Interest (related to an investment of Five Hundred Thousand U.S. Dollars (US $500,000);

b.     The partnership has provided evidence that the Project plan has been formally submitted to the Chicago Commissioner of Planning and Development.

(*Id.*)

According to Plaintiffs, the evidence shows that TD Bank breached the Escrow Agreement by prematurely releasing 100% of Plaintiffs' funds from escrow.  (SAC ¶ 56.)  As a result of this release, the Investors' funds were disbursed to unauthorized recipients and were not used to advance the project with Carillon.  (*Id.* ¶ 64-67.)

Following the Court's decisions on TD Bank's motion to dismiss and the parties' cross-motions for summary judgment, Plaintiffs have only breach of contract claims remaining.[1]  (ECF No. 189 ("Opp.") at 7.)

### B.     Proposed Classes and Representatives

Plaintiffs seek to certify a class under Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a class defined as:

All foreign investors who paid a total of $550,000.00 into the TD Bank escrow accounts pursuant to the Carillon Tower/Chicago Escrow Agreement and/or the Carillon Tower Offering Memorandum on or after May 19, 2015.

(Mem. at 8.)

Plaintiffs propose as class representatives the named Plaintiffs.  (*Id.* at 13.)

---

[1] Plaintiffs state that they are proceeding to trial only on the breach of contract claims. (ECF No. 196 at 1 n.1.)  By stipulation of the parties filed on October 29, 2025, the promissory estoppel claims were dismissed with prejudice.  (ECF Nos. 198, 199.)

### C.    Procedural History

Plaintiffs originally sued TD Bank and other defendants on November 28, 2018, in the United States District Court for the Northern District of Illinois.  *See Dou, et al. v. Carillon Tower/Chicago LP et al.*, No. 18-CV-7865 (N.D. Ill. Nov. 28, 2018), ECF No. 1.  In accordance with the forum selection clause in the Escrow Agreement, the parties agreed to sever the claims against TD Bank and transfer them to the Southern District of New York.  *Dou*, No. 18-CV-7865 (N.D. Ill. May 14, 2019), ECF No. 109.  However, the Illinois district court erroneously dismissed the claim instead of transferring it.  *Dou*, No. 18-CV-7865 (N.D. Ill. June 6, 2019), ECF No. 117.  Eventually, that court corrected the error, severed Plaintiffs' claims against TD Bank, and transferred them to this Court.  *Dou*, No. 18-CV-7865 (N.D. Ill. May 25, 2023), ECF No. 535.  At the request of Plaintiffs, the Illinois court vacated its previous dismissal to clarify that "claims against TD were not 'dismissed' but severed and transferred to the Southern District of New York."  *Dou*, No. 18-CV-7865 (N.D. Ill. Nov. 16, 2023), ECF No. 607 at 1.

Plaintiffs filed the SAC in this Court on September 13, 2023. (*See generally* SAC.)  TD Bank moved to dismiss the SAC on October 20, 2023.  (ECF No. 35.)  Pursuant to a stipulation of the parties, the Court dismissed Plaintiffs' first claim, a derivative action on behalf of Carillon, with prejudice on January 2, 2024. (ECF No. 55.)  On September 20, 2024, the Court granted in part and denied in part TD Bank's motion to dismiss, dismissing Plaintiffs' implied contract, fiduciary duty, and negligence claims, but permitting Plaintiffs' contract claims under a third-party-beneficiary theory and Plaintiffs' promissory estoppel claims to proceed.  *See generally Dou I*, 2024 WL 4252500.

On December 18, 2024, both Plaintiffs and TD Bank filed motions for summary judgment.  (ECF No. 103; ECF No. 108.)  On July 9, 2025, the Court denied the parties' motions

and directed Plaintiffs to file any motion for class certification within 14 days of the publication

of the order.  *See generally Dou II*, 2025 WL 1898254.

On July 15, 2025, Plaintiffs filed their motion for class certification (ECF No. 180)

along with an accompanying memorandum of law (Mem.).  On August 19, 2025, TD Bank

filed its brief in opposition (Opp.), and Plaintiffs filed their reply brief on October 22, 2025

(ECF No. 196).  TD Bank filed a letter motion for leave to file a sur-reply on October 28,

2025.  (ECF No. 197.)[2]

## II.    Discussion

### A.    Class Definition

As a threshold matter, TD Bank challenges Plaintiffs' proposed class definition.  In the

operative complaint, Plaintiffs defined the putative class as foreign investors who invested

"pursuant to the Escrow Agreement, the Offering Memorandum *and* Investment Documents."

(Opp. at 14 (citing SAC ¶ 70 (emphasis added)).)  The SAC, in turn, defines the "Escrow

Agreement" as the "Escrow Agreement between Carillon and the defendant TD Bank" attached

as Exhibit 2—the May 2015 Escrow Agreement.  (SAC ¶¶ 29, 38; ECF No. 25-2.)  TD Bank

therefore contends that the operative pleading limits the class to investors who invested pursuant

to that specific agreement and related documents.  (Opp. at 14.)

To the extent that Plaintiffs now seek certification of a different class—namely, foreign

investors who invested "pursuant to the Carillon Tower/Chicago Escrow Agreement *and/or* the

Carillon Tower Offering Memorandum on or after May 19, 2015" (Mem. at 8 (emphasis

---

[2] TD Bank's motion for leave to file a surreply (ECF No. 197) is granted.  The surreply fairly raises two points: first, to correct a misstatement of the record in Plaintiffs' reply; and second, to point out that the issue of third-party beneficiary status has been left to the jury.

added))—the Court declines to adopt that revised class definition. Although a court is not bound by the class definition proposed in the complaint, *in re DiDi Global Inc. Sec. Litig.*, No. 21-CV-5807, 2025 WL 1909295, at *6 (S.D.N.Y. Jul. 7, 2025), Plaintiffs neither substantively brief their revised class definition nor meaningfully respond to TD Bank's objection to it. Accordingly, the class is limited to those investors who invested pursuant to the Escrow Agreement as defined in the SAC—that is, the May 2015 Escrow Agreement.

### B.    Class Certification

Class certification is governed by Federal Rule of Civil Procedure 23. Section (a) of Rule 23 requires the party seeking certification to establish four prerequisites:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A party seeking certification must also satisfy the implied requirement of ascertainability, "a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason." *Floyd v. City of New York*, 283 F.R.D. 153, 171 (S.D.N.Y. 2012).[3]

In addition to Rule 23(a)'s factors, plaintiffs must demonstrate at least one of three grounds for class certification under Rule 23(b). *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152,

---

[3] The parties do not dispute numerosity, commonality, or ascertainability, so the Court does not address them.

159 (S.D.N.Y. 2014). Relevant to the present motion, Plaintiffs may establish that common "questions of law or fact . . . predominate over" individual questions pertaining to individual members such that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ P. 23(b)(3).

Pursuant to Rule 23(b), the questions of law or fact common to class members must predominate over any questions affecting only individual members, and a class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. The predominance requirement is satisfied only "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted)).

### 1.    Typicality and Adequacy of the Class Representatives

The third and fourth subsections of Rule 23(a) require that the claims or defenses of the proposed class representatives "are typical of the claims or defenses of the class" and that the proposed representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). To establish typicality, plaintiffs "must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted). To establish adequacy, plaintiffs must show that "the proposed class representative [has] an interest in vigorously pursuing the claims of the class, and [has] no interests antagonistic to the interests of other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir.

2016) (quotation marks omitted).  In addition, courts decline to allow a proposed class representative who has "repeatedly given false or contradictory testimony . . . [to serve] as class plaintiff because the credibility of the plaintiff 'will become the focus of cross-examination at trial, impeding her ability to effectively represent the class.'"  *Garcia De Leon v. New York Univ.*, No. 21-CV-05005, 2022 WL 2237452, at *14 (S.D.N.Y. June 22, 2022) (*citing Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010)).

Here, the named Plaintiffs are typical of the Investors and will fairly and adequately protect the interest of the Investors.  The named Plaintiffs' claims arise from the same course of events as those of the Investor class more generally, and each class member will make similar legal arguments to prove TD Bank's liability.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015).  The Plaintiffs will rely on the same evidence supporting their claims, including the testimony of TD Bank and Carillon's corporate representatives and the document production from TD Bank and Plaintiffs, including the Escrow Agreement.  (Mem. at 12.)  *See In re Scotts*, 304 F.R.D. at 406 (concluding that typicality is established when "all plaintiffs will marshal[] the same evidence and arguments in support of their claims").

TD Bank argues that certain lead Plaintiffs—Shi, Yao, Wang, Xing, Tao, and Go—are neither typical nor adequate class representatives because each has presented serious credibility issues and will face unique defenses that will become points of focus at trial.  (Opp. at 26.)  TD Bank's arguments as to credibility do not convince the Court.

First, TD Bank argues that Wang, Xing, Tao, and Go have admitted to perjuring themselves in their I-526 petitions submitted to USCIS.  (*Id.* at 27.)  In those petitions, each represented that family members or friends converted the funds they invested in the Chicago Project from Chinese yuan to U.S. dollars.  (*Id.* (citing exhibits).)  During their depositions,

however, each acknowledged that some or all of the individuals who converted their funds were, in fact, strangers. (*Id.*) On that basis, TD Bank argues that their credibility is so susceptible to attack that their claims are atypical of, and potentially antagonistic to, those of other class members. (*Id.*)

The case law on typicality and adequacy grounded in credibility concerns does not support such an expansive view. Courts have found a proposed representative inadequate on credibility grounds primarily where the asserted defect bears directly on a material element of the plaintiff's substantive claims. *See, e.g., Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2022 WL 20053871, at *1 (S.D.N.Y. Sept. 29, 2022); *Bowling v. Johnson & Johnson*, No. 17-CV-3982, 2019 WL 1760162, at *6 (S.D.N.Y. Apr. 22, 2019) (finding credibility concerns significant where inconsistent testimony was not "peripheral" to the claims); *In re NYSE Specialists Sec.. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (explaining that credibility considerations are confined to their relevance to issues in the litigation); *German v. Federal Home Loan Mortg. Corp.*, 168 F.R.D. 145, 154 (S.D.N.Y. 1996) (holding that credibility subject to attack must relate to an issue "critical" to the plaintiff's causes of action).

These authorities establish that the credibility inquiry does not turn on the existence of generalized impeachment material. Rather, the relevant question is whether the alleged credibility vulnerability would impair the representative plaintiff's ability to prove a necessary element of the claims at trial. Here, whether Plaintiffs' funds were converted by family, friends, or strangers—and, more broadly, whether they complied with Chinese currency regulations— does not bear on the elements of their breach of contract claim. That issue is collateral to the contractual undertakings at issue and to TD Bank's alleged breach. Accordingly, even assuming

the availability of impeachment on that point, it does not render Wang, Xing, Tao, or Go inadequate class representatives under Rule 23(a)(4).

Second, TD Bank contends that Plaintiff Shi invoked the Fifth Amendment during her deposition when asked about the source of the funds she invested in Carillon, thereby exposing her to unique credibility attacks.  (Opp. at 28.)  But TD Bank cites no authority—and this Court is aware of none—holding that a proposed class representative is *per se* inadequate simply because she invoked the Fifth Amendment in discovery.  And, once again, courts assessing adequacy focus on whether any asserted credibility issue goes to a material element of the representative's claims.  TD Bank argues only that Shi declined to answer questions concerning the source of the funds she invested in the Chicago Project.  As discussed above, however, the source of those funds is collateral to the elements of Plaintiffs' breach of contract claim.  Because the issue is peripheral rather than central to liability, Shi's invocation of the Fifth Amendment, like the somewhat inconsistent testimony of her peers, does not create the type of credibility conflict that would render her an inadequate class representative.

Third, TD Bank contends that Plaintiff Yao offered inconsistent and incomplete testimony on issues it characterizes as critical—namely, whether she reviewed the Escrow Agreement prior to investing and whether she communicated with other investors about the project with Carillon.  (*Id.* at 28-29 (*citing generally* ECF No. 190-26).)  With respect to the Escrow Agreement, Yao's deposition reflects some uncertainty and imperfect recollection as to whether she received and reviewed the Escrow Agreement before investing in the project with Carillon.  (*See* ECF No. 190-26 at 17 ("Q: Are you sure that you received a copy of the escrow agreement before you invested in the Chicago Project?  A: I think there should be one, but I cannot remember."); *Id.* at 24 ("Q: Did you have a copy of the escrow agreement before 2019?

A: It was a long time ago.  I cannot remember it clearly.").)  Yao's testimony demonstrates at most a hazy memory regarding the timing of her receipt of the document and not an affirmative contradiction.  A "mere failure to recall certain relevant facts" does not render a witness incredible or inadequate to serve as a class representative.  *Downie v. Carelink, Inc.*, No. 16-CV-5868, 2018 WL 3585282, at \*7 (S.D.N.Y. July 26, 2018).  As to Yao's testimony regarding whether she communicated with other investors about the project, she again responded that she could not remember.  (ECF No. 190-26 at 13-16.)

Even assuming that certain aspects of Yao's testimony could be characterized as inconsistent, the subject matter of those exchanges is collateral to the core elements of the breach of contract claim.  The operative questions for liability concern the terms of the Escrow Agreement and TD Bank's alleged performance or nonperformance under that agreement—not the precision of Yao's recollection regarding when she first reviewed the document or whether she discussed the investment with others.  Indeed, while reliance would be relevant to the now-dismissed promissory estoppel claims, it is not directly relevant to the contract claims.  Accordingly, these asserted discrepancies do not undermine her adequacy as a class representative.

Finally, TD Bank states that Plaintiff Yao and Tao failed to produce the appropriate materials and documents, such as Yao's cell phone and I-526 Petition and Tao's unidentified other documents.  (*Id.* at 29-30.)  TD Bank's cited cases in support of this argument are distinguishable.  In *Koss v. Wackenhut Corp.*, certain named plaintiffs missed their originally scheduled and rescheduled depositions and failed to respond to numerous of the defendants' discovery requests.  No. 03-CV-7679, 2009 WL 928087, at \*8 (S.D.N.Y. Mar. 30, 2009).  Tao and Yao attended their depositions, and TD Bank provides no citation for its claim that Tao and

Yao failed to produce relevant documents, or that the documents are even central to the question of whether TD Bank received written notice regarding each Plaintiff's Form I-526 Petition. (*See* Opp. at 29.)  Accordingly, TD Bank has not shown that Tao and Yao committed the sort of "glaring violations of the discovery rules," *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 197 (S.D.N.Y. 1985), that typically lead to disqualification.  Further, Yao's lost cell phone, unlike the spoliation of the allegedly contaminated drugs in *Pagan v. Abbott Labs., Inc.*, is unlikely to create a unique defense that will threaten to become the focus of the litigation.  *Cf.* 287 F.R.D. 139, 150 (E.D.N.Y. 2012) (citing *Brown v. Kelly*, 609 F.3d 467, 480 (2d Cir. 2010)).

TD Bank also argues that the named-Plaintiffs are not adequate class representatives and that they have made "no effort to prove . . . the sort of diligence, integrity, familiarity, and engagement necessary to represent the class fairly and adequately." (Opp. at 30.)  TD Bank argues that adequacy under Rule 23(a)(4) is not met because some of the named Plaintiffs have "offloaded oversight of their claims to non-parties," that some "are not monitoring the litigation," and that some Plaintiffs "lack a basic familiarity with the claims, pleadings, and facts." (*Id.* 30-34 (cleaned up).)  However, Plaintiffs have demonstrated "adequate personal knowledge of the essential *facts* of the case" to satisfy Rule 23(a)(4) adequacy.  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007) (emphasis in original).

Here, even if TD Bank's arguments regarding Plaintiffs' unfamiliarity with their own I-526 petitions were correct, such lack of knowledge would not be so substantial that they threaten the case.  *See Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004).  TD Bank does not allege that the Plaintiffs have failed to demonstrate adequate knowledge of the alleged Escrow Agreement, knowledge of the funds they allegedly deposited pursuant to the Escrow Agreement, or knowledge of the losses that they allegedly

suffered as a result of TD Bank's failure to comply. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61-62 (2d Cir. 2000) (ruling that the proposed class representative was adequate because "named plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel" and it was sufficient that the proposed class representative "understood that the [] investments were the subject of th[e] litigation"). Therefore, there are no "deficiencies in knowledge" that "either pertain to issues central to the plaintiffs' case or . . . are so substantial that they threaten to undermine plaintiffs' case as a whole." *Beach v. JPMorgan Chase Bank, Nat'l Ass.*, No. 17-CV-563, 2019 WL 2428631, at *8 (S.D.N.Y. Jun. 11, 2019) (quotation marks omitted).

Moreover, TD Bank's specific allegation that Plaintiffs Dou, Zhan, and Shao have shifted all responsibility for overseeing and prosecuting their claims to their husbands or parents (Opp. at 31) is without merit. For example, in Shao's deposition, he expresses a clear understanding about the nature of the action, including how much he is claiming in losses in connection with his investment. (ECF No. 190-21 at 16, 17.) Moreover, although Dou stated that she learned about the lawsuit through her husband, she also stated that she understands the lawsuit to be regarding the Carillon Project and that the suit requests a return of the Investors' funds. (ECF No. 190-23 at 14.) Similarly, Zhan stated that her husband coordinated many of the investment matters, as most documents were in English, which she could not understand. (ECF No. 190-25 at 7.) Even so, Zhan properly understands the claims that she brings against TD Bank to be related to the Escrow Agreement that she saw "between the project party (Carillon) and TD Bank." (*Id.* at 9.)

Ultimately, particularly in light of the Second Circuit's disapproval of "myopic . . . attacks on the adequacy of a class representative based on the representative's ignorance," Dou,

Zhan, and Shao's current or previous reliance on their families' advice is neither so unusual nor

so egregious as to undermine adequacy of class representation. *Baffa*, 222 F.3d at 61 (rejecting

adequacy challenge based on lack of knowledge because "the extent that [named plaintiff] relies

on his father and lawyer for advice . . . should not disqualify him as a representative").

### 2.    Predominance

For a class to be certified pursuant to Rule 23(b)(3), the court must find that "the

questions of law or fact common to class members predominate over any questions affecting

only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement of Rule

23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation

marks and citations omitted). Plaintiff "must demonstrate that 'resolution of some of the legal or

factual questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and [that] these particular issues are more substantial than the issues

subject only to individualized proof.'" *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. at 205 (citation

omitted).

Here, Plaintiffs assert the following predominating questions of fact and law for the

remaining contract claim:

> (i) Whether TD Bank was on inquiry notice of the . . . Escrow Agreement; (ii)
> Whether TD Bank breached the . . . Escrow Agreement by failing to withhold
> 20% of the Capital Contribution and by releasing 100% of Plaintiffs' investment
> money; (iii) Whether TD Bank breached the . . . Escrow Agreement by releasing
> the funds without receiving written direction from Carillon certifying compliance
> with the conditions set forth under the Holdback Trigger; and (iv) Whether
> Plaintiffs have the right to a return of their money under the . . . Escrow
> Agreement, the Offering Memorandum and/or the Investment Documents.

(Mem. at 10-11.)

TD Bank advances several arguments in opposition.

To the extent that TD Bank contends that the Investors were not identified as third-party beneficiaries to the Escrow Agreement—and that any breach-of-contract claim therefore fails as a matter of law (Opp. at 24)—the Court rejects that contention.  In its order denying TD Bank's motion to dismiss, this Court concluded that the Plaintiffs plausibly alleged that they were third-party beneficiaries to the Escrow Agreement, *Dou I*, 2024 WL 4252500, at *5, and refused to revisit that conclusion in its order denying the cross-motions for summary judgment, *Dou II*, 2025 WL 1898254, at *1 n.1.  *See e.g.*, *Hill v. City of New York*, 136 F. Supp. 3d 304, 359 n.23 (E.D.N.Y. 2015) (concluding that where a defendant reasserts an argument from the motion to dismiss stage, the court should not reconsider the argument, as an inquiry into the merits of that claim is inappropriate in deciding a motion for class certification), *order amended and supplemented*, No. 13-CV-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019); *Lewis Tree Serv., Inc. v. Lucent Techs.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002) ("A motion for class certification should not . . . become a mini-trial on the merits.").  Even so, TD Bank is correct that the question of whether investors were intended to be third-party beneficiaries is to be decided a trial. (ECF No. 197 at 2.)  Regardless, this Court will not reach or resolve this merits issue at this stage, as it remains a question for the jury.

Relatedly, TD Bank contends that because third-party beneficiary status is a question for trial, individualized issues will necessarily predominate.  Specifically, TD Bank asserts that "reliance" and the "reasonableness of such reliance" are components of the third-party beneficiary analysis, and that resolving those elements will require individualized, fact-intensive inquiries.  (Opp. at 24.)

As a legal matter, however, TD Bank is incorrect.  "The touchstone of third-party beneficiary status is the intent of the parties to the agreement."  *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021); *see Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d. Cir. 2005) (an individual is a third-party beneficiary to a contract where "the parties to the contract intended to confer a benefit on the third party").  Thus, in this case, third-party beneficiary status of the Plaintiffs will turn on the intent of TD Bank and Carillon, and not on the Plaintiffs' intent.

TD Bank's dependance on dicta in *Moreno-Godoy v. Kartagener* is misplaced. (Opp. at 24 (citing *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 86 n.3 (2d Cir. 2021).  In a footnote, the panel stated that "an intended third-party beneficiary is found where 'reliance by the beneficiary [is] both reasonable and probable.'" *Moreno-Godoy*, 7 F.4th at 86 n.3 (*quoting Fourth Ocean Putnam Corp. v. Interstate Wrecking Co*., 66 N.Y.2d 38, 44 (1985)).  But that observation neither altered nor expanded New York's settled third-party beneficiary doctrine, and it certainly did not impose reliance as an independent, mandatory element.  The Second Circuit did not purport to restate the elements of a third-party beneficiary claim, nor did it suggest that reliance is categorically required in every case.

Moreover, the case on which the Second Circuit relied for its footnote, *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y. 2d 38 (N.Y. 1985), itself does not establish reliance as a freestanding element.  Again, under New York law, a plaintiff establishes intended third-party beneficiary status by showing: (1) the existence of a valid and binding contract between other parties; (2) that the contract was intended for the plaintiff's benefit; and (3) that the benefit to the plaintiff is sufficiently immediate to indicate the contracting parties' assumption of a duty to compensate the plaintiff if the

benefit is lost.  *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).

Any reference to "reasonable and probable" reliance in *Fourth Ocean* reflects evidentiary

indicia of intent—not a doctrinal requirement that the third party have actually relied on

the contract.  Accordingly, TD Bank's argument improperly elevates a passing gloss into a

new element of the claim.  Reliance may be probative in certain contexts, but it is not a

necessary condition of third-party beneficiary status under controlling New York law.

     Finally, TD Bank argues that the circumstances of each Investor's transfers of

funds to TD Bank require an individualized assessment per Rule 23(b)(3)'s predominance

requirement.  (Opp. at 25 ("Key issues at trial will be what each investor learned about the

Chicago Project, how he or she decided to invest in the Chicago Project, and how she or

she marshalled the funds to invest in the Chicago Project.  Each of these issues will require

individualized inquiries into each putative class member that will overwhelm common

issues, precluding class certification.").)  For example, TD Bank cites the record to

demonstrate that some Investors may not have complied with Chinese currency

restrictions.  (*Id.* at 26.)

     These minor facts are irrelevant to class certification now.  As an initial matter, the

parties do not dispute that TD accepted these funds, regardless of whether Investors

complied with Chinese law.  Moreover, in assessing the predominance requirement, courts

focus on whether there are common questions related to the defendant's liability.  *See*

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015).  Therefore, any

minor differences in how Investors marshalled the funds to invest in Carillon is irrelevant

to class certification.  Rather, the common questions of liability—whether TD Bank

disbursed the putative members' investment money in violation of the terms of the Escrow

Agreement, and whether any violation of the Escrow Agreement gave rise to the Plaintiffs' damages—predominate.

## III.   Conclusion

For the foregoing reasons, Plaintiffs' motion to certify a class pursuant to Rule 23(b)(3) is GRANTED.  The following class is certified:  "All foreign investors who paid $550,000.00 into the TD Bank escrow accounts pursuant to the Escrow agreement, the Offering Memorandum and Investment Documents."

Plaintiffs' counsel, Glen J. Dunn & Associates, Ltd., and Levin-Epstein & Associates, P.C., are appointed class counsel.

The Clerk of Court is hereby directed to close the motions pending at ECF No. 180 and ECF No. 197.

SO ORDERED.

Dated: March 13, 2026
      New York, New York

_____
        J. PAUL OETKEN
     United States District Judge